IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TYRONE POWELL,

        Petitioner,            No. CIV S-05-1786 GEB KJM P

    vs.

DAVID RUNNELS,

        Respondent.        FINDINGS & RECOMMENDATIONS

_____/

       Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner challenges his Sacramento County convictions for assault with a firearm and shooting into an inhabited dwelling.  This action is proceeding on the amended petition filed February 6, 2008.  Petitioner claims that: (1) his rights to due process and to confront the witnesses against him were violated when the trial court admitted into evidence statements made by the victim's daughter to a 911 operator; (2) the state court violated his constitutional rights when it denied his motion for a mistrial after a transcript of the victim's conversation with a 911 operator was distributed to the jury; and (3) his trial counsel rendered ineffective assistance.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied for the reasons provided below.

1

I. Background[1]

Defendant Tyrone Powell was convicted of shooting his former girlfriend and sentenced to an aggregate prison term of 39 years to life.

On appeal, he contends the trial court erred in admitting into evidence the tape of a 911 call made by the victim's six-year-old daughter, in which she identified the shooter as her mother's "best friend," a term she used to describe defendant. Defendant also contends the trial court abused its discretion in denying his motion for a mistrial after the jury briefly received the transcript of a later 911 call by the victim, which contained an inadmissible hearsay statement by the 911 dispatcher that "all of the neighbors" said the victim's "best friend" had shot her.

We conclude the trial court properly admitted the tape of the daughter's 911 call because her statement to the dispatcher that her mother had been shot by her "best friend" was inconsistent with her trial testimony that she did not know what had happened to her mother when she called 911.

We also conclude the trial court did not abuse its discretion in denying the mistrial motion. Given the substantial amount of evidence defendant was the shooter, the lack of any direct evidence the jury actually read the 911 dispatcher's hearsay statement that "all of the neighbors" had identified the victim's "best friend" as the shooter, and the instruction to the jury to decide the facts based only on the evidence, the trial court reasonably could have determined that the possibility one or more of the jurors saw the 911 dispatcher's inadmissible hearsay statement did not justify a mistrial.

/////

/////

/////

/////

/////

/////

---

[1]  This statement of facts is taken from the March 15, 2004 opinion by the California Court of Appeal for the Third Appellate District, as modified on rehearing by order dated April 13, 2004.  Respondent lodged a copy of the opinion as Appendices A and B to Lodged Document D in support of the Answer, but omitted pages 6-8.  Accordingly, this court retrieved the entire opinion on Westlaw.  See People v. Powell, No. C043317, 2004 WL 501733 (Cal.App. 3 Dist., 2004) (unpublished disposition).

FACTUAL AND PROCEDURAL BACKGROUND

On the night of July 23, 2001, Gerrietta Warr was shot in the foot while standing at her front door.  At 9:50 p.m., Warr's six-year-old daughter, Lavesha, called 911 and reported that her mother's "best friend," who lived across the street from them, "shot [her] in the leg."  Lavesha later testified that defendant was her mother's best friend.

Two minutes after Lavesha's call, Warr called 911 and told the dispatcher she was okay, she had just stepped on some glass.  The following exchange then occurred:

"911: Oh, you didn't get shot in the leg?"

"GW: No, baby.

"911: OK because that's the report we got.

"GW: From where?

"911: From all your neighbors.

"GW: No, I didn't get shot.

"911: Ok, because all of the neighbors said that they heard the shots and that you got shot in the leg.  (Indiscernible)

"GW: No, I'm ok.

"911: And they told us who did it though.

"GW: They told you who did it?

"911: Yeah.

"GW: Well who did it?

"911: Well, you tell me.

"GW: I don't know.

"911: Your best friend.

"GW: My best friend?

"911: Yes.

"GW: I don't have a best friend."

/////

The call ended when Warr refused to give her name and denied having a bullet in her leg.

Sacramento Police Officer Timothy Chan was dispatched to the scene, where he interviewed Warr.  Warr told Officer Chan that defendant, who was her ex-boyfriend and whose mother lived across the street, had shot her while she was standing at the front door and he was standing on the porch.  Officer Ernest Lockwood, who also responded to the call, interviewed Laven Cisco, Lavesha's father, and he agreed defendant was the shooter.

Defendant was charged by amended information with one count of assault with a firearm and one count of discharging a firearm at an inhabited dwelling.  The information also alleged two prior convictions.

In an about-face, Warr testified at the preliminary hearing that she did not remember how she got shot, and she denied seeing defendant at all that night.  Perhaps because of this sudden reversal, at trial the prosecutor moved in limine to introduce into evidence the tape recording of the 911 call Lavesha made to assist in proving defendant was the shooter.  No mention was made of Warr's call.

The trial court held an Evidence Code section 402 hearing to determine if Lavesha's statement to the 911 dispatcher about who shot her mother was admissible over a hearsay objection.  One of the prosecutor's arguments was that Lavesha's statement should be admitted as a spontaneous statement under Evidence Code section 1240.[2]  The prosecutor contended it was "clear from the tape itself" that Lavesha was reporting to the dispatcher what she had seen.  After listening to the tape, however, the trial court disagreed, noting there was "nothing inherent on this tape recording which proves to us that she had to have been in a position to actually see this as opposed to somebody telling her who did it."

The prosecutor then sought to prove Lavesha saw the shooting by examining both Lavesha and her father at the 402 hearing.  Lavesha's father testified he was not present when the shooting occurred and claimed he told that to the police officer who interviewed him.  Lavesha also claimed she was not in the house when her mother was shot.  She said she came home with her

---

[2] "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."  (Cal. Evid.Code, § 1240.)

father[3] and found her mother's foot was bleeding and that was how she knew her mother had been shot. She denied talking to her mother about what happened before she called 911, and she did not remember telling the 911 dispatcher that her mother's best friend was the person who had shot her, although she remembered making the call. When the tape was played for her, Lavesha testified she did not remember why she said her mother's best friend shot her.

Following Lavesha's testimony, the trial court stated its "ruling would be the same as far as the 911 tape," and the prosecutor said she intended "to put on the little girl on the stand and impeach her with it." Again, there was no mention of Warr's call to 911. At some point that day, however, before trial testimony began, the prosecutor had marked as exhibits transcripts of Lavesha's call to 911 and Warr's call to 911, each of which was three pages long. In her opening statement, the prosecutor referred to both calls, but she did not refer to those portions of the calls in which it was asserted Warr was shot by her best friend.

Warr, who was the first witness for the prosecution, testified she was home alone playing Pac-Man in the living room when she was shot in the foot through her front door. She claimed Lavesha and her father came home after she was shot and Lavesha "didn't see anything." Warr also repeated her claim that she had no idea who shot her. When she said she did not remember what she told the 911 dispatcher, the prosecutor played a brief portion of the tape of Warr's call to 911. Warr responded she could not "remember" if it was her voice on the tape. When she said she did not remember telling the 911 dispatcher she had stepped on glass, the prosecutor asked to approach, and an unreported discussion was held at the bench. Further examination regarding Warr's 911 call followed, and Warr admitted telling the 911 dispatcher she had not been shot, but denied having a "conversation" with the dispatcher. The prosecutor then asked to play the tape recording of Warr's telephone call to 911. The court responded: "All right. Just a second here. All right. I need to talk to you. All right. Pass the transcripts-Deborah, collect the transcripts. Don't read them any more, just pick them up." Apparently, the court had just discovered that a complete transcript of Warr's call to 911 had been handed out to the jurors, including that portion of the call in which the 911 dispatcher said that "all of the neighbors" had identified Warr's "best friend" as the shooter.

/////

---

[3] This aspect of Lavesha's testimony contradicted her father's claim that he returned to the house alone and did not see Lavesha until "after [he] had gotten to the house."

Another unreported bench conference occurred, followed by the noting of an unspecified objection by defense counsel on the record.  When the court announced that the prosecutor was "going to play what amounts to the first page" – which did not include Warr's claim of having stepped on glass or the dispatcher's statements about Warr's "best friend" – the prosecutor asked for another bench conference.  Following that conference, the prosecutor asked to play the tape for the jury and to have the transcripts returned to them.  She then apparently told the bailiff, "They can have the transcripts back."  As the bailiff began to pass out the transcripts again, the court interrupted, asking "What are you doing?" and telling the prosecutor, "I said they are not going to have the transcript because you're not going to play the whole tape."  When the prosecutor responded she did not understand that the court had told her she could play only part of the tape, the court asked the jury to step outside.

During the discussion that followed, the court observed that the latter part of the tape, which included the 911 dispatcher's statements about who shot Warr, "is getting into some substantial hearsay" and "would be highly prejudicial."  The court further asserted the transcript "should have never been passed out to the jury."  The prosecutor argued she was not offering the tape "for hearsay purposes" but "for a nonhearsay purpose to demonstrate the victim's bias, the victim's uncooperative nature."  When the court informed her she did not "need to get into something that's highly prejudicial" to demonstrate Warr's attitude, the prosecutor replied that the jury was "going to hear the tape that mentions the best friend comment through the daughter."

As the discussion continued, defense counsel asserted the prosecutor had "just passed ... out" the transcript and the jurors had it "for a couple of minutes before the Court ordered it collected by the bailiff."  Defense counsel then moved for a mistrial "because now they are hearing testimony from the 911 operator that we know who did it, and shots fired, and all of that.  So that the prejudicial value has already been implanted in the jury's mind."  The court responded: "I think that we acted fairly quickly to gather up all the transcripts.  But even if they did see it, they are going to know fairly shortly why the 911 operator would say that, because this little kid told her that."  The court proceeded to deny the mistrial motion "because I don't think there's any prejudice involved in light of what's about to come."

/////

/////

/////

/////

6

The following day, before Lavesha testified, defense counsel noted for the record his objection to admission of the 911 call by Lavesha because "it's not a spontaneous or contemporaneous declaration, nor is it a prior consistent or inconsistent statement." The court overruled the objection, noting use of the tape was "a legitimate effort on the prosecution's part to attempt to persuade the little girl ... to admit the truth that she was in fact there" when Warr was shot or "that her mother told her who had done this."

On the stand, Lavesha testified that when she and her father returned to the house on the night of the shooting, her mother was not yet hurt. She said she was in the house, close to her mother, when her mother got hurt, but she did not remember what room she was in, although she claimed she was behind her father. She first said she did not hear anything before her mother got hurt, but then said she heard the TV and heard her mother arguing with someone outside. She denied hearing any loud noises, but after she heard her mother arguing she saw blood on her mother's foot and called 911. The following exchange then occurred:

"Q. Why did you do that?

"A. Because it was an emergency.

"Q. Did you know what had happened to your mom?

"A. No.

"Q. Did you ask her?

"A. No.

"Q. Did you see what happened?

"A. No.

"Q. Did your mom tell you what happened?

"A. No.

"Q. Did your mom tell you that Tyrone was there?

"A. No.

"Q. Who's your mom's best friend?

"A. Tyrone."

Lavesha then identified defendant as Tyrone.

/////

7

1      When Lavesha claimed she did not remember telling the 911
2  dispatcher that it was her mother's best friend, who lived across the
   street, who hurt her mother, the court allowed the prosecutor to
3  play the 911 tape.  On cross-examination, Lavesha did not know
   why she said her mother's best friend was the one who hurt her
4  mother.  Then, on both cross- and redirect examination, Lavesha
   denied seeing who shot her mother and claimed neither her mother
   nor her father told her who shot her mother.

5

6      The jury found defendant guilty of both charges, and the court
   found the prior conviction allegations true.

7  (People v. Powell, No. C043317, 2004 WL 501733 at *1-*4.)

8  II.  Standards for a Writ of Habeas Corpus

9      An application for a writ of habeas corpus by a person in custody under a

10  judgment of a state court can be granted only for violations of the Constitution or laws of the

11  United States.  28 U.S.C. § 2254(a).  Also, federal habeas corpus relief is not available for any

12  claim decided on the merits in state court proceedings unless the state court's adjudication of the

13  claim:

14      (1) resulted in a decision that was contrary to, or involved an
   unreasonable application of, clearly established federal law, as
15  determined by the Supreme Court of the United States; or

16      (2) resulted in a decision that was based on an unreasonable
   determination of the facts in light of the evidence presented in the
17  State court proceeding.

18  28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").[4]  It is the habeas

19  petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See

20  Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

21  /////

22  /////

23  /////

24  /////

25

26      [4]  Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not
   grounds for entitlement to habeas relief.  Fry v. Pliler, 127 S. Ct. 2321, 2326-27 (2007).

1    The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are

2    different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

10    Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the

11    law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply

12    fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8

13    (2002).

14    The court will look to the last reasoned state court decision in determining

15    whether the law applied to a particular claim by the state courts was contrary to the law set forth

16    in the cases of the United States Supreme Court or whether an unreasonable application of such

17    law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S.

18    919 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial

19    of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court

20    must perform an independent review of the record to ascertain whether the state court decision

21    was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other

22    words, the court assumes the state court applied the correct law, and analyzes whether the

23    decision of the state court was based on an objectively unreasonable application of that law.

24    It is appropriate to look to lower federal court decisions to determine what law has

25    been "clearly established" by the Supreme Court and the reasonableness of a particular

26    application of that law.  "Clearly established" federal law is that determined by the Supreme

9

Court.  Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004).  At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been "clearly established" and the reasonableness of a particular application of that law. Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at 782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court precedent is misplaced).

III.  Petitioner's Claims

 A.  Admission into Evidence of Lavesha Warr's 911 Call

Petitioner claims that his rights to due process and to confront the witnesses against him were violated when the trial court admitted into evidence the statements made by Lavesha Warr to the 911 operator.  (Second Amended Petition filed February 6, 2008 (hereinafter Pet.) at 5; Traverse at 22-26.)  He argues that Lavesha's statements constituted hearsay and were not properly admissible as inconsistent statements.  (Pet. at 5.)  He also argues his right to confrontation was violated because he was unable to cross-examine the 911 operator.  (Id.)  The California Court of Appeal rejected these arguments with the following reasoning:

> Defendant contends the trial court erred in admitting the tape recording of Lavesha's 911 call because it contained inadmissible hearsay that was neither a spontaneous statement, a contemporaneous statement, nor a prior inconsistent statement.  He also contends the court abused its discretion under Evidence Code section 352 in admitting the tape recording.  We conclude Lavesha's statements during her 911 call were admissible as prior inconsistent statements and the trial court did not abuse its discretion in concluding the probative value of those statements outweighed any potential prejudice to defendant.

/////

/////

/////

/////

/////

"A statement by a witness that is inconsistent with his or her trial testimony is admissible to establish the truth of the matter asserted in the statement under the conditions set forth in Evidence Code sections 1235 and 770.[5]  The 'fundamental requirement' of section 1235 is that the statement in fact be inconsistent with the witness's trial testimony.  [Citation.] . . . 'Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness' prior statement [citation], . . .' [Citation.]"  (People v. Johnson (1992) 3 Cal.4th 1183, 1219, 14 Cal.Rptr.2d 702, 842 P.2d 1.)  "'As a general principle, it is to be understood that this inconsistency is to be determined, not by individual words or phrases alone, but by the whole impression or effect of what has been said or done.  On a comparison of the two utterances, are they in effect inconsistent?'"  (Worley v. Spreckels Bros. Com. Co. (1912) 163 Cal. 60, 72, 124 P. 697.)

"Evidence Code section 770 provides that: 'Unless the interests of justice otherwise require, extrinsic evidence of a statement made by a witness that is inconsistent with any part of his testimony at the hearing shall be excluded unless: [¶] (a) The witness was so examined while testifying as to give him an opportunity to explain or to deny the statement; or [¶] (b) The witness has not been excused from giving further testimony in the action.'"  In her call to 911, Lavesha told the dispatcher her mother's "best friend," who lived across the street, had shot her mother in the leg.  The only way Lavesha could have known that defendant shot her mother was if she saw it happen or if someone told her what happened.  At trial, however, Lavesha testified that when she called 911: (1) she did not know what had happened to her mother; (2) she did not see what happened; (3) she did not ask her mother what happened; (4) her mother did not tell her what happened; and (5) her father did not tell her what happened.  The impression given by Lavesha's trial testimony was that she had no idea what had happened to her mother.  That impression, however, was completely inconsistent with Lavesha's prior statement to the 911 dispatcher that defendant had shot her mother in the leg.  Thus, the tape recording of Lavesha's 911 call was admissible under Evidence Code section 1235 as a prior inconsistent statement.

Defendant contends that even if the tape recording was "admissible under an exception to the hearsay rule, the trial court erred in refusing to exclude it under [Evidence Code] section 352."  We disagree.

/////

---

[5]  California Evidence Code section 1235 provides as follows: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770."

Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

"Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time." (People v. Rodrigues (1994) 8 Cal.4th 1060, 1124, 36 Cal.Rptr.2d 235, 885 P.2d 1.) A court's exercise of its discretion under Evidence Code section 352 is not a ground for reversal unless the court acted in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (People v. Ochoa (2001) 26 Cal.4th 398, 437-438, 110 Cal.Rptr.2d 324, 28 P.3d 78.)

Although defendant did not object to the tape recording as more prejudicial than probative, the court nevertheless stated that it "weighed [the tape recording] under 352 of the Evidence Code" and "I do feel the probative value substantially outweighs any prejudice that would be involved in playing the 911 tape." We find no abuse of discretion in that conclusion. First, the trial court was correct that the tape recording, in which Lavesha identified defendant as the shooter, had significant probative value as impeachment of her trial testimony, which was to the effect that she had no idea what happened to her mother. Second, there was no undue prejudice to defendant from the tape recording. Although defendant contends "Lavesha's statements to the 911 operator were highly prejudicial for the obvious reason that they effectively identified [him] as the shooter," that is not the type of "prejudice" with which Evidence Code section 352 is concerned. "'Prejudice' as contemplated by section 352 is not so sweeping as to include any evidence the opponent finds inconvenient. Evidence is not prejudicial, as that term is used in a section 352 context, merely because it undermines the opponent's position or shores up that of the proponent. The ability to do so is what makes evidence relevant. The code speaks in terms of undue prejudice . . . .'" The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, 'prejudicial' is not synonymous with 'damaging.'" [Citation.]'" (Vorse v. Sarasy (1997) 53 Cal.App.4th 998, 1008, 62 Cal.Rptr.2d 164.)

/////

/////

/////

12

1
2
3

> Defendant fails to identify any "undue prejudice" within the meaning of Evidence Code section 352, that he suffered, or was in substantial danger of suffering, from the admission of the tape recording. Accordingly, the trial court did not abuse its discretion in admitting the tape recording into evidence.

4  (People v. Powell, No. C043317, 2004 WL 501733 at *4-*5.)

5        Petitioner first argues the trial court violated his right to due process when it

6  admitted into evidence Lavesha's statements to the 911 operator. He contends the state appellate

7  court erred when it determined that the transcript was admissible under California Evidence

8  Code §§ 770 and 1235 as an inconsistent statement. However, absent some federal constitutional

9  violation, a violation of state law does not provide a basis for habeas relief. Estelle v. McGuire,

10  502 U.S. 62, 67-68 (1991). A state court's evidentiary ruling, even if erroneous, is grounds for

11  federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate

12  due process. Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d

13  971, 977-78 (9th Cir. 1999). See also Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir.

14  1991) ("the issue for us, always, is whether the state proceedings satisfied due process; the

15  presence or absence of a state law violation is largely beside the point").

16        The admission into evidence of Lavesha's 911 call did not render petitioner's trial

17  fundamentally unfair. As explained by the California Court of Appeal, Lavesha's statement to

18  the 911 operator that her mother was shot by petitioner was clearly inconsistent with her

19  testimony at trial that she did not know what had happened to her mother or who had shot her

20  mother. As such, it was clearly relevant to test Lavesha's credibility on the witness stand. The

21  fact that the evidence was damaging to petitioner does not mean his trial was rendered

22  fundamentally unfair by its admission. See Jammal, 926 F.2d at 920 ("only if there are no

23  permissible inferences the jury may draw from the evidence can its admission violate due

24  process," and "even then, the evidence must "be of such quality as necessarily prevents a fair

25  trial"). The admission at a criminal trial of a prior inconsistent statement does not rise to the

26  level of a due process violation unless reliable evidence in support of a conviction is "totally

1   lacking." California v. Green, 399 U.S. 149, 163 n.15 (1970).  As explained below, there was

2   significant reliable evidence in support of petitioner's conviction in this case.[6]

3          Petitioner also claims his right to confrontation was violated because he was

4   unable to cross-examine the 911 operator.  (Pet. at 5; Traverse at 23.)  Petitioner did not make

5   this argument in the state courts, and respondent contends the issue is therefore unexhausted.

6   (Answer at 2, 10.)  However, as set forth below, even assuming this claim was not exhausted in

7   state court, this court will recommend that the claim be denied on the merits.  See 28 U.S.C. §

8   2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits,

9   notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

10  State"); Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (a federal court considering a

11  habeas petition may deny an unexhausted claim on the merits when it is perfectly clear that the

12  claim is not "colorable").[7]

13         The Sixth Amendment to the United States Constitution grants a criminal

14  defendant the right "to be confronted with the witnesses against him."  U.S. Const. amend. VI.

15  In 2004, the United States Supreme Court held that the Confrontation Clause bars the state from

16  introducing into evidence out-of-court statements that are testimonial in nature unless the witness

17  is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless

18  of whether such statements are deemed reliable.  Crawford v. Washington, 541 U.S. 36 (2004).

19  The Crawford decision applies to this case because it was decided prior to petitioner's appeal.

20

21         [6]  Although petitioner does not appear to be making an argument that his right to
    confrontation was violated by the admission of Lavesha's statements to the 911 operator, any
22  such claim should be denied.  The United States Supreme Court has stated that "the
    Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as
23  the declarant is testifying as a witness and subject to full and effective cross-examination."
    Green, 399 U.S. at 158.  Lavesha was a trial witness and was subject to extensive cross-
24  examination.  Accordingly, the admission of her statements to the 911 operator did not violate
    the Confrontation Clause.  Id.

25

26         [7]  In order to be colorable, a claim must have both legal and factual support.  Beaudry
    Motor Co. v. Abko Properties, Inc., 780 F.2d 751, 756 (9th Cir. 1986).

1   Winzer v. Hall, 494 F.3d 1192, 1194 (9th Cir. 2007).  Statements made in a 911 call during an

2   ongoing emergency are not testimonial in nature and therefore are not subject to the requirements

3   set forth in Crawford.  Davis v. Washington, 547 U.S. 813, 826-30 (2006).

4            Confrontation Clause violations are subject to harmless error analysis.  Whelchel

5   v. Washington, 232 F.3d 1197, 1205-06 (9th Cir. 2000).  "In the context of habeas petitions, the

6   standard of review is whether a given error 'had substantial and injurious effect or influence in

7   determining the jury's verdict.'"  Christian v. Rhode, 41 F.3d 461, 468 (9th Cir. 1994) (quoting

8   Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).  Factors to be considered when assessing the

9   harmlessness of a Confrontation Clause violation include the importance of the testimony,

10  whether the testimony was cumulative, the presence or absence of evidence corroborating or

11  contradicting the testimony, the extent of cross-examination permitted, and the overall strength

12  of the prosecution's case.  Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).[8]

13           Assuming that petitioner's right to confrontation was violated by his inability to

14  cross-examine the 911 operator, any error was harmless under the circumstances of this case.

15  The testimony of the 911 operator would not have been important to petitioner's defense; on the

16  contrary, it was irrelevant.  The operator had no independent knowledge of the circumstances of

17  the shooting and petitioner has not demonstrated or even suggested how her testimony would

18  have been helpful to his case.  In addition, the case against petitioner was substantial.  The victim

19  told a police officer at the scene that petitioner shot her, ran to the driveway of his mother's

20  house across the street and fired two more shots, and then got into a car driven by his mother and

21  drove away.  (Reporter's Transcript on Appeal (RT) 297-301.)  Laven Cisco, Lavesha's father,

22  told a police officer at the scene he heard petitioner yelling into the victim's house and walked to

23  the front door, where he heard two or three loud noises that sounded like gunshots.  (RT 317.)

24

---

25           [8]  Although Van Arsdall involved a direct appeal and not a habeas action, "there is
    nothing in the opinion or logic of Van Arsdall that limits the use of these factors to direct
26  review."  Whelchel, 232 F.3d at 1206.

1  After he heard the gunshots, the victim said she had been shot in the foot.  (RT 317-318.)  Mr.

2  Cisco then saw petitioner running across the street to his mother's house, fire four more shots,

3  get into his mother's car, and drive off.  (RT 318; <u>see</u> <u>also</u> Traverse, Ex. A at consecutive

4  pp. 11-12.)  Maria Cruz, a neighbor, testified she heard gunshots and screams coming from the

5  victim's house.  (RT 274-275.)  She heard more shots, looked over at the victim's house, and saw

6  petitioner run from the victim's house to his mother's house and drive away in a car driven by his

7  mother.  (RT 276-277.)  Further evidence established that shell casings found on the porch near

8  the front door of the victim's house matched a shell casing found in the driveway of petitioner's

9  mother's house and were fired from the same .32 caliber firearm.  (RT 303-306, 310, 328, 331-

10  336, 339-345, 350-353.)  In light of the overwhelming evidence of petitioner's guilt,  petitioner's

11  inability to cross-examine the 911 operator could not have had a substantial and injurious effect

12  or influence in determining the jury's verdict.

13  Accordingly, for all the reasons described above, petitioner is not entitled to relief

14  on his claims that his rights to due process and to confrontation were violated by the admission

15  into evidence at his trial of the 911 call made by Lavesha Warr.

16  B.  <u>Motion for Mistrial</u>

17  Petitioner's next claim is that the trial court violated his right to a fair trial when it

18  denied his motion for a mistrial after a transcript of the victim's conversation with a 911 operator

19  was distributed to the jury.  (Pet. at 5; Traverse at 5-10.)  He also argues he "had no prior

20  opportunity to cross-examine the 911 operator resulting in violating petitioner's confrontation

21  clause under the 6th Amendment of United States Constitution."  (Pet. at 5.)  The California

22  Court of Appeal denied these claims, reasoning as follows:

23  Defendant contends the trial court abused its discretion in denying
   his motion for a mistrial after a transcript of Warr's call to 911 was
24  distributed to the jury.  We disagree.

25  /////

26  /////

"We review the denial of a motion for mistrial under the deferential abuse of discretion standard. [Citations.] 'A motion for mistrial is directed to the sound discretion of the trial court. [The Supreme Court has] explained that "[a] mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions."'" (People v. Cox (2003) 30 Cal.4th 916, 953, 135 Cal.Rptr.2d 272, 70 P.3d 277.)

Defendant contends the prosecutor acted in bad faith when she "intentionally put inadmissible evidence before the jury" – specifically, the transcript of Warr's 911 call, in which the dispatcher told Warr that "all of the neighbors" had said Warr was shot by her "best friend" – a statement that consisted of multiple layers of hearsay. He further contends the prejudice resulting from this misconduct was incurable. The trial court concluded otherwise, however, and we find no abuse of discretion in that conclusion.

First, the record does not demonstrate how long the transcript of Warr's 911 call was in the jury's possession, let alone whether any of the jurors actually looked at the transcript before it was picked up. In the trial court's assessment, court personnel "acted fairly quickly to gather up all the transcripts." If defendant wanted to show the jury had actually read the inadmissible hearsay statement in the transcript, he could have asked the court to examine the jurors individually to determine whether they had. He failed to do so, however, and therefore there is no direct evidence any of the jurors actually saw that statement.

Second, the hearsay statement from the 911 dispatcher that "all of the neighbors" were saying Warr was shot by her "best friend" was far from the only evidence identifying defendant as the shooter. As the trial court anticipated when it denied defendant's mistrial motion, the tape of Lavesha's call to 911 was played to the jury, and the jury heard Lavesha herself tell the 911 operator her mother's "best friend" – defendant – had shot her. In addition, a neighbor later testified she heard gunshots coming from the vicinity of Warr's house, then saw defendant running from the house with a gun in his hand. Also, Officers Chan and Lockwood testified that both Warr and Cisco had identified defendant as the shooter in their statements immediately following the incident. Given all of this evidence that defendant was the shooter, the mere possibility that one or more of the jurors read the 911 operator's hearsay statement to the same effect did not require the trial court to declare a mistrial.

/////

/////

17

> Finally, we note that neither the tape of Warr's 911 call nor the transcript of the call was admitted into evidence, and the jurors were instructed they were to "decide all questions of fact in this case from the evidence received in the trial and not from any other source."  "We presume the jury acted reasonably and followed the instructions it was given." (People v. Cunningham (2001) 25 Cal.4th 926, 1014, 108 Cal.Rptr.2d 291, 25 P.3d 519.)

> Given the substantial amount of evidence defendant was the shooter, the lack of any direct evidence the jury actually read the 911 dispatcher's hearsay statement, and the instruction to the jury to decide the facts based only on the evidence, we conclude the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

(People v. Powell, No. C043317, 2004 WL 501733 at *5-*6.)

Petitioner is claiming his trial was rendered fundamentally unfair when the entire transcript of the victim's 911 call was briefly distributed to the jury by the court bailiff.  He implies the jurors would not have been able to be impartial after receiving the 911 transcript.  It is true that criminal defendants have a due process right to be tried by "a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 723 (1961); Jeffries v. Blodgett, 5 F.3d 1180, 1189 (9th Cir. 1993).  However, "[h]abeas relief is usually warranted only if the alleged constitutional errors had a "substantial and injurious effect or influence in determining the jury's verdict.'" Jackson v. Brown, 513 F.3d 1057, 1069-70 (9th Cir. 2008) (quoting Brecht, 507 U.S. at 637).  See also Fry v. Pliler, 551 U.S. 112 (2007).

The California Court of Appeal determined, in essence, that any error in distributing to the jury the transcript of the 911 call was harmless.  This court agrees.  As explained by the state appellate court, there is no evidence that any of the jurors read the 911 transcript in the several minutes before it was removed from their possession.[9]  Even if they had,

---

[9]  Petitioner argues the record reflects the jurors read the transcript.  (Traverse at 6.)  In support of this argument, he cites the following statements by the trial judge after the transcript was distributed to the jury:

> THE COURT:  All right.  Just a second here.  All right.  I need to

1    the evidence against petitioner was substantial, consisting in part of the testimony of several

2    witnesses who gave consistent accounts of what had occurred.  Finally, the jury heard Lavesha's

3    statement to the 911 operator that her mother was shot by her "best friend."  Under those

4    circumstances, evidence that the 911 operator told the victim several neighbors had identified the

5    shooter as her "best friend" would not have had a substantial and injurious effect on the verdict.

6    Even petitioner concedes "there's no way of knowing how much of an effect the transcripts had

7    on the jury's verdict."  (Traverse at 7.)

8            Petitioner's claim that his right to confrontation was violated because he was

9    unable to cross-examine the 911 operator should be denied for the same reason.  Any violation of

10   petitioner's right to confrontation was harmless under the circumstances of this case.

11   Accordingly, petitioner is not entitled to relief on these claims.[10]

12           C.  <u>Ineffective Assistance of Trial Counsel</u>

13           Petitioner claims he received ineffective assistance of trial counsel.  Specifically,

14   he faults his trial counsel for failing to "fully investigate" his prior robbery conviction and failing

15   to advise petitioner to "move for a continuance when a key witness for the defense died from an

16   illness."  (Pet. at 6.)  Petitioner raised these claims for the first time in a petition for a writ of

17

18           talk to you.  All right.  Pass the transcripts – Deborah, collect the
             transcripts.  *Don't read them any more*, just pick them up.
19           (Emphasis added.)

20   (RT 160.)  These comments do not provide evidence that any juror actually read the transcript or,
     more specifically, read that portion of the transcript where the 911 operator states the neighbors
21   had reported the victim was shot by her "best friend."  Accordingly, this statement by the trial
     judge does not provide support for petitioner's argument.
22

23           [10]  In the traverse, petitioner claims the prosecutor committed misconduct when she
     allowed the transcript to be distributed to the jury.  (Traverse at 8.)  To the extent petitioner is
24   attempting to belatedly raise a new claim of prosecutorial misconduct in the traverse, relief
     should be denied.  <u>See</u> <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994) (a traverse
25   is not the proper pleading to raise additional grounds for relief).  Even if a claim of prosecutorial
     misconduct had been properly raised, petitioner has failed to demonstrate a constitutional
26   violation.  For the reasons described above, any error by the prosecutor in causing the transcript
     to be briefly distributed to the jury was harmless.

1  habeas corpus filed in the Sacramento Superior Court.  (Lodged Document F.)  The Superior

2  Court denied the petition on the merits and as "untimely," citing In re Robbins, 18 Cal.4th 770,

3  811-12, 812 n.32 (1998) and In re Clark , 5 Cal.4th 750, 774-74 (1993).  (Lodged Document G,

4  at 1.)  Subsequent petitions to the California Court of Appeal and California Supreme Court

5  raising the same claims were summarily denied.  (Lodged Documents I, K.)  Respondent argues

6  that the Superior Court's citations to Robbins and Clark constitute a procedural bar precluding

7  this court from addressing the merits of petitioner's claims of ineffective assistance of trial

8  counsel.  (Answer at 19-23.)

9          1.  Procedural Default

10          State courts may decline to review a claim based on a procedural default.

11  Wainwright v. Sykes, 433 U.S. 72, 81-82 (1977).  As a general rule, a federal habeas court "'will

12  not review a question of federal law decided by a state court if the decision of that court rests on

13  a state law ground that is independent of the federal question and adequate to support the

14  judgment.'"  Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996)

15  (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  The state rule for these purposes is

16  only "adequate" if it is "firmly established and regularly followed."  Id. (quoting Ford v.

17  Georgia, 498 U.S. 411, 424 (1991)).  See also Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir.

18  2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and

19  consistently applied.").  The state rule must also be "independent" in that it is not "interwoven

20  with the federal law."  Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting Michigan

21  v. Long, 463 U.S. 1032, 1040-41 (1983)).  Even if the state rule is independent and adequate, the

22  claims may be reviewed by the federal court if the petitioner can show:  (1) cause for the default

23  and actual prejudice as a result of the alleged violation of federal law; or (2) failure to consider

24  the claims will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 749-50.

25          A reviewing court need not invariably resolve the question of procedural default

26  prior to ruling on the merits of a claim where the default issue turns on difficult questions of state

1   law.  Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also Busby v. Dretke, 359 F.3d

2   708, 720 (5th Cir. 2004).  Under the circumstances presented here, this court finds

3   petitioner's claims of ineffective assistance of trial counsel can be resolved more easily by

4   addressing them on the merits.

5          2. Legal Standards

6          The Sixth Amendment guarantees the effective assistance of counsel.  The United

7   States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

8   Strickland v. Washington, 466 U.S. 668 (1984).  To support such a claim, a petitioner must first

9   show that, considering all the circumstances, counsel's performance fell below an objective

10   standard of reasonableness.  Id. at 687-88.  After a petitioner identifies the acts or omissions that

11   are alleged not to have been the result of reasonable professional judgment, the court must

12   determine whether, in light of all the circumstances, the identified acts or omissions were outside

13   the wide range of professionally competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S.

14   510, 521 (2003).  "Judicial scrutiny of counsel's performance must be highly deferential," and "a

15   court must indulge a strong presumption that counsel's conduct falls within the wide range of

16   reasonable professional assistance."  Knowles v. Mirzayance, ___ U.S. ___, 129 S. Ct. 1411,

17   1420 (2009) (quoting Strickland, 466 U.S. at 689).  "Strategic choices made after thorough

18   investigation of law and facts relevant to plausible options are virtually unchallengeable."

19   Strickland, 466 U.S. at 690.

20          A petitioner must also establish that he was prejudiced by counsel's deficient

21   performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

22   probability that, but for counsel's unprofessional errors, the result of the proceeding would have

23   been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine

24   confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224

25   F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's

26   performance was deficient before examining the prejudice suffered by the defendant as a result of

1  the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of

2  lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949,

3  955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

4              3.  Failure to Investigate Prior Conviction

5              Petitioner claims his trial counsel rendered ineffective assistance by failing to

6  "fully investigate" his prior conviction for robbery.  Specifically, petitioner claims that one of his

7  prior convictions, which was found to be a "strike," was actually a misdemeanor and therefore

8  did not qualify as a strike under California law.  He argues, in essence, that if his trial counsel

9  had conducted sufficient investigation into this prior conviction allegation, he could have

10 prevented it from being used as a "strike" to enhance petitioner's sentence.  (Pet. at 6; Traverse at

11 15-20.)

12             The California Superior Court denied this claim on the merits, reasoning as

13 follows:

14             Petitioner claims that his trial counsel was ineffective, in failing to
             fully investigate his prior 1988 Alameda County robbery
15             conviction, which he claims resulted in the prosecution using an
             unproveable "strike."  He claims that the sentencing transcripts
16             from the case show that the conviction was stricken in the interest
             of justice, and that the prosecution in this case failed to show that
17             the conviction was of all the elements of robbery.

18             In support, petitioner attaches a copy of a partial reporter's
             transcript of the change of plea hearing if [sic] April 27, 1988 from
19             the 1988 Alameda County case, that shows virtually nothing
             concerning the plea that was entered.  Petitioner also attaches a
20             copy of partial reporter's transcript from a June 25, 1997 change of
             plea proceeding in another Alameda County case, in which the
21             court stated that the People at that time, for purposes of that case,
             were unable to prove "the strike prior," which the court there then
22             struck.  It does not identify what prior conviction this was related
             to, nor does it show that in Case No. 01F07202, the evidence was
23             insufficient to show that petitioner had suffered a prior 1988
             Alameda County conviction for robbery, a listed serious felony for
24             "strike" purposes for a crime committed at the time petitioner's
             current crime was committed in Case No. 01F07202 (see former
25             Penal Code § 1192.7(c)(19) (Proposition 21, § 17, effective March
             8, 2000); see also former Penal Code §§ 667.1, 1170.125
26             (Proposition 21, §§14, 16)).  Petitioner also attaches a copy of the

abstract of judgment in the prior 1988 Alameda County case, which clearly shows a conviction for second degree robbery. Petitioner also attaches a copy of the minute order in the prior 1988 Alameda County case, showing the conviction and that petitioner was placed on probation for the offense.  These documents alone are sufficient to prove the prior conviction and that it qualified as a "strike prior."  That petitioner was placed on probation for the offense does not affect its use as a "strike prior" (see Penal Code §§ 667(d)(1), 1170.12(b)(1)).  As the trial court in Case No. 01F07202 considered a 20-page document to evidence this particular conviction, and petitioner fails to present evidence that he did not, in fact, suffer a prior 1988 Alameda County conviction for second degree robbery, petitioner fails to set forth a prima facie case for relief.  Having failed to substantiate his claim, he cannot show that no jury or court would have found the 1988 prior conviction allegation to have been true, thus the claim is barred under Robbins/Clark, and fails in any event under In re Bower

(1985) 38 Cal.3d 865, In re Swain (1949) 34 Cal.2d 300, and In re Harris, supra, 5 Cal.4th 813, 827 fn. 5).

(Lodged Document G at 2.)

The state court record reflects petitioner was charged in the instant case, in a December 30, 2002 amended information, with assault with a firearm and discharging a firearm at an inhabited dwelling house.  (Clerk's Transcript on Appeal (CT) at 46-47.)  It also was alleged petitioner had suffered two prior serious felony "strike" convictions: a robbery committed on April 27, 1988, and a robbery committed on June 25, 1997.  (Id. at 47-48.)  After a court trial at which the court examined documents submitted by the prosecutor, the trial judge found these prior conviction allegations to be true.  (RT 565-571; CT 7, 202-262.)  Petitioner admitted his 1997 prior robbery conviction, providing the basis for a strike.  (Traverse at 15.)  However, he claims his 1988 prior robbery conviction did not qualify as a strike.  (Id.)

/////

/////

/////

/////

/////

23

1    The documents before this court indicate petitioner was convicted on April 27,

2    1988 of second degree robbery and was sentenced on June 3, 1988, to a three year suspended

3    sentence, with the first year of the probationary period to be served in the Alameda County Jail.

4    (CT 217.)[11]   However, petitioner explains that pursuant to an agreement between himself and the

5    prosecutor during the sentencing proceedings on June 3, 1988, he was promised that, because of

6    his cooperation with authorities, after he served his sentence "the conviction would be reduced

7    back to a misdemeanor and would not be used against petitioner in the future."  (Traverse at 19.)

8    Petitioner states the transcript of the June 3, 1998 proceedings, wherein this agreement was

9    apparently memorialized, is missing from the record.  He argues that, because there is no

10   evidence he waived his constitutional rights at that hearing, his conviction must be set aside.  (Id.

11   at 15-18.)  He also argues that his June 3, 1988 agreement with the prosecutor must be

12   specifically enforced.  (Id. at 19-20.)  Finally, petitioner argues that because he did not serve time

13   in prison for the 1988 robbery, but was only confined to county jail, his conviction was reduced

14   to a misdemeanor by operation of law.  (Id.)

15       Under California's Three Strikes Law, a misdemeanor does not qualify as a

16   "strike."  Cal. Penal Code § 667(b) - (I).  Under California law, some offenses, so-called

17   "wobblers," can be punished as either a misdemeanor or a felony.  See Ferreira v. Ashcroft, 382

18   F.3d 1045, 1051 (9th Cir. 2004).  "In the case of wobblers, the characterization of the crime is

19   dependent upon the actual punishment imposed. . . When a defendant is sentenced to state prison,

20   the offense is a felony; when the defendant is sentenced to county jail, the offense is a

21   misdemeanor."  People v. Terry, 47 Cal.App.4th 329, 332 (1996).  A "wobbler" remains a felony

22   until the court exercises its discretion to impose a misdemeanor punishment.  People v. Morse, 2

23   Cal.App.4th 620, 647 (1992); People v. Samarjian, 240 Cal.App.2d 13, 23 (1966); Cal. Penal

24   Code § 17.  California's Three Strikes Law "expressly provides that the determination whether a

25

26       [11]  The robbery was charged in Count 1 of the complaint.  (Id.)  At sentencing, an
unspecified 3rd Count was dismissed on motion of the prosecutor in furtherance of justice.  (Id.)

prior felony conviction qualifies as a 'strike' 'shall be made upon the date of that prior conviction and is not affected by the sentence imposed unless the sentence automatically, upon the initial sentencing, converts the felony to a misdemeanor.'" People v. Trausch, 36 Cal.App.4th 1239, 1246 (1995); Cal. Penal Code § 667(d)(1). See also People v. Vessell, 36 Cal.4th 285, 292 (1995) ("Section 667, subdivision (d) [provides] an exemption from its definition of prior convictions for those "wobbler" convictions which have been transformed through sentencing to a misdemeanor.").

To be subject to reduction to a misdemeanor under California Penal Code section 17(b), the charging statute, or statute prescribing punishment, must provide that the crime is a "wobbler;" that is, punishable either by imprisonment in state prison or county jail. See People v. Superior Court (Alvarez), 14 Cal.4th 968, 974 n.4 (1997) . Because California Penal Code section 213 makes robbery punishable by imprisonment in state prison, and does not provide for a fine or imprisonment in the county jail, it is not a wobbler. Cal. Penal Code § 17(b); People v. Morgan, No. E043574, 2008 WL 3199527, *3 (Cal.App. 4 Dist. 2008) (unpublished disposition); People v. Hearon, No. B176310, 2006 WL 122080 (Cal.App. 2 Dist. 2006) (unpublished disposition). Rather, second degree robbery is a violent and serious felony, and qualifies as a "strike" under the Three Strikes Law. Cal. Penal Code §§ 667.5(c)(9) ("any robbery" is a violent felony), 1192.7(c)(19) (robbery is a "serious felony"), 667(e)(2)(A), 1170.12(c)(2)(A). A suspended sentence does not reduce a conviction to a misdemeanor. Cal. Penal Code §§ 667(d)(1)(A), 1170.12(b)(1)(A).

Petitioner has failed to demonstrate that his 1988 conviction for second degree robbery was reduced to a misdemeanor by an unreported plea agreement at the June 3, 1988 sentencing hearing, as he claims. On the contrary, the minute order of the June 3, 1988 hearing shows petitioner was sentenced on a felony conviction for second degree robbery. (Traverse, Ex. D at consecutive p. 1.) None of the documents filed by petitioner convinces this court that the state courts erroneously determined petitioner was convicted of a felony robbery on April 27,

1988 and was sentenced on that conviction on June 3, 1998, or that petitioner was promised his conviction would later be reduced to a non-strike misdemeanor.[12]  For this reason, petitioner has failed to demonstrate his trial counsel's failure to further investigate the circumstances of his prior conviction would have changed the outcome of the court trial.

Petitioner also has failed to establish there was any breach of a plea agreement with the state.  He was convicted of the 1988 robbery pursuant to a plea agreement, which provided the imposition of sentence would be suspended, he would be placed on probation for a term of three years, and he would serve one year in county jail.  (CT 228.)  At the change of plea hearing, petitioner was advised of and waived his constitutional rights.  (CT 228-238.)  Petitioner was sentenced in accordance with the terms of the agreement.  (CT 223, 225.)  Petitioner's claim that he entered into another agreement on a different date is conclusory and unsupported by any reference to the trial record and is therefore insufficient to establish a constitutional violation.  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'" (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).  Finally, petitioner was not sentenced only to county jail on the 1988 robbery conviction.  Rather, as explained above, he was sentenced to a suspended sentence,

---

[12]  Petitioner has filed a document including a notation dated June 3, 1988 that he was convicted of second degree robbery, a felony, and received "prob/jail."  (Traverse, Ex. B at consecutive p. 2.)  A different notation dated May 5, 1990, states: "probation modified sen: 006 months jail."  (Id.)  These cryptic notations do not persuade the court petitioner was promised at the June 3, 1988 sentencing proceedings his conviction would be reduced to a misdemeanor after he served his sentence, or that his conviction was downgraded to a misdemeanor by operation of state law.

Petitioner also notes that at the change of plea hearing on the 1997 robbery, the sentencing judge struck an unspecified prior conviction suffered by petitioner because the prosecution was unable to substantiate it.  (Traverse, Ex. E at 6.)  The judge stated he struck the prior "for this case only for sentencing only."  (Id.)  This court agrees with the California Superior Court that this transcript does not support petitioner's claim that his 1988 prior robbery conviction did not qualify as a strike for purposes of the instant proceeding.  In fact, the judge at the 1997 proceeding specifically informed petitioner that if he were convicted of a future felony, "because of your conviction in this case and because of the prior from 1988, the minimum sentence you will be eligible to receive is 25 years to life."  (Id. at 3.)  The judge therefore acknowledged his understanding that the 1988 conviction was a "strike" prior.

with one year of his probation to be served in jail.  This sentence does not automatically convert his conviction to a misdemeanor.

For the reasons set forth above, petitioner has failed to establish that his 1988 prior conviction was ineligible to be used as a "strike" when imposing his sentence in this case. Accordingly, he has failed to establish prejudice with respect to his claim that his trial counsel rendered ineffective assistance because of counsel's failure to fully investigate his prior convictions.

4.  Failure to Request a Continuance

Petitioner claims his trial attorney rendered ineffective assistance by failing to request a trial continuance after one of the proposed defense witnesses was hospitalized for a serious illness before she could testify.  The California Superior Court rejected this claim, reasoning as follows:

> Petitioner also claims that his trial counsel was ineffective, in failing to move for a continuance or a mistrial when a key defense witness, Valerie Cullen, who petitioner claims could have identified the "real shooters" in the case, was hospitalized for a brain aneurysm, from which she later died.
>
> The claim is barred under Robbins/Clark, and petitioner fails to set forth any exception to that bar.  Further, petitioner attaches only a partial transcript of what appears to have been a Marsden hearing (see People v. Marsden (1970) 2 Cal.3d 118), in which it is implied that it had been petitioner's own personal desire that the trial not be stopped due to the witness's unavailability.  Nor does petitioner show, by reasonably available documentary evidence, that the witness would have become available had the trial been continued; indeed, his admission that she died implies that she might not have recovered at any point in time so as to have become able to testify had the trial been continued.  As such, the claim fails in any event (Bower, supra; Swain, supra; Harris, supra).

(Lodged Document G at 3.)

/////

/////

/////

27

1    The state court record reflects the following colloquy occurred after a discussion

2  of Ms. Cullen's unavailability:

3    THE COURT:  All right.  My understanding is that from what you
     were telling me informally off the record, is that your client's
4    position is he does not want to declare a mistrial and have the trial
     at some later date in the future.  Am I correct?

5
     MR. WALTON (petitioner's counsel):  Correct.
6
     THE COURT:  He wants to proceed with this trial.  Is that a
7    correct statement, Mr. Powell?

8    THE DEFENDANT:  Yes.

9  (RT 52.)  Petitioner now states his trial counsel convinced him to continue with the trial despite

10  Ms. Cullen's unavailability, and that after he agreed to do so he discovered Cullen had "made

11  two statements one to the police at the time of the shooting and one days prior to trial to trial

12  counsel's investigator, nevertheless this information was withheld from petitioner among other

13  key information."  (Traverse at 20.)

14    The record also reflects Ms. Cullen told the police investigator at the scene that

15  she went outside her house after she heard two gunshots, she heard a car speed away but was not

16  able to see it, she saw the victim outside on her front porch after the shooting occurred, and she

17  had seen the victim and petitioner on the front porch talking sometime prior to the shooting.

18  (RT 46-47; Traverse, Ex. A at consecutive p. 6.)  Ms. Cullen told the defense investigator she

19  heard three or four gunshots, looked out the window and saw people running away, and that she

20  did not see petitioner.  (RT 47.)  She also told the investigator she saw petitioner "there" earlier

21  in the day and she saw petitioner's mother talking to a police officer.  (Id.)  Petitioner was made

22  aware of these two statements given by Ms. Cullen before he agreed to continue with the trial.

23  (RT 47, 52.)

24    Under the circumstances presented here, petitioner's trial counsel did not render

25  ineffective assistance in failing to request a continuance of the trial because of the illness of

26  Valerie Cullen.  First, it appears petitioner himself wished to continue with the trial, even after he

1   was apprised of the substance of Ms. Cullen's testimony.  Further, it is reasonably clear that Ms.

2   Cullen would have been unable to attend the trial even if a continuance had been granted.  Even

3   if she had been able to attend the trial or to give a statement at some point before she died, it does

4   not appear to this court that Cullen's testimony would have made a difference in the outcome of

5   petitioner's trial.  As noted by the trial judge, "saying . . . I did not see Mr. Powell is different

6   than saying I know for sure Mr. Powell was not one of the people who were there."  (RT 47.)

7   Under the circumstances presented here, petitioner cannot demonstrate deficient performance or

8   prejudice with respect to trial counsel's failure to insist on a trial continuance after Ms. Cullen

9   became unavailable as a witness.  Accordingly, petitioner is not entitled to relief on this claim.[13]

10                  D.  Evidentiary Hearing

11          Petitioner requests an evidentiary hearing on his claims.  (Traverse at 27.)  Under

12   28 U.S.C. § 2254(e)(2), a district court presented with a request for an evidentiary hearing must

13   first determine whether a factual basis exists in the record to support a petitioner's claims and, if

14   not, whether an evidentiary hearing "might be appropriate."  Baja v. Ducharme, 187 F.3d 1075,

15   1078 (9th Cir. 1999).  See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005);

16   Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005).  He must also "allege[] facts

17   that, if proved, would entitle him to relief."  Schell v. Witek, 218 F.3d 1017, 1028 (9th Cir.

18   2000).  Petitioner has not demonstrated that any additional facts need to be determined to resolve

19

20          [13] Petitioner raises several additional claims in his traverse.  Specifically, he claims his
trial counsel rendered ineffective assistance when he failed to "have a pretrial hearing to disclose
the prosecution's case against petitioner," failed to locate alibi witnesses, failed to investigate
21   discrepancies between "witnesses police reports and their testimony," and failed to have
sufficient knowledge about petitioner's case.  He also claims the trial court improperly denied his
22   motion for substitute counsel.  (Traverse at 21-22.)  As explained above, claims may not be
raised for the first time in a traverse.  In any event, petitioner has failed to demonstrate prejudice
23   with respect to any of these claims.  There is no evidence that the outcome of the proceedings
would have been different if counsel had conducted further investigation into petitioner's case or
24   insisted on a "pretrial hearing."  Further, there is no evidence that a complete breakdown in
communication between petitioner and his trial counsel required the appointment of new counsel.
25   On the contrary, a review of the record reflects trial counsel's performance was well within the
"wide range of professionally competent assistance."  Strickland, 466 U.S. at 690.  Accordingly,
26   petitioner's claims raised in the traverse lack merit and should be denied.

1   the claims raised in the instant petition.  Further, this court has determined that relief as to

2   petitioner's claims should be denied on the merits because either the state court's decision was

3   not contrary to, or an unreasonable application of, clearly established federal law or based on an

4   unreasonable determination of the facts, or the claims lack merit.  Accordingly, an evidentiary

5   hearing is not warranted on petitioner's claims.  See Williams, 529 U.S. at 445; Earp, 431 F.3d at

6   1166.

7          For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

8   application for a writ of habeas corpus be denied.

9          These findings and recommendations are submitted to the United States District

10  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

11  days after being served with these findings and recommendations, any party may file written

12  objections with the court and serve a copy on all parties.  Such a document should be captioned

13  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

14  shall be served and filed within ten days after service of the objections.  The parties are advised

15  that failure to file objections within the specified time may waive the right to appeal the District

16  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17  DATED:  June 17, 2009.

18

19

20                                        _____
                                          U.S. MAGISTRATE JUDGE
21

22

23

24

25  8:powell1786.hc

26

30